Cheshire,
March 2, 1909.

## PERRY & a. v. MARYLAND CASUALTY CO.

An exception to the denial of a motion to dismiss a bill in equity for want of proof does not raise the question whether there was evidence to support a decree for the plaintiff in its entirety, but whether there was any evidence warranting a finding of the facts upon which the decree was based.

Where an insurance agency contract stipulated that in the event of its cancellation the agent's right to certain commissions should be forfeited, evidence that after cancellation, and as a consideration for entering into a new agreement, the company promised to pay the commissions earned under the original contract, is sufficient to establish a waiver of the provision.

Where an insurance agency contract predicated the payment of certain commissions to the agent upon the prompt remittance of premiums by him, evidence that such commissions were paid although the remittances were delayed beyond the date agreed upon is admissible to prove the company's waiver of the condition.

Where a person has assumed to act for an insurance company in the negotiation of an agency contract and the adjustment of differences under a prior agreement, evidence that he procured the contract and presented it for signature, and that the president of the company acknowledged him as its agent, is admissible to prove his authority.

An exception to testimony is to be regarded as waived if the written memoranda and correspondence upon which the witness relied is thereafter put in evidence by agreement of the parties.

BILL IN EQUITY, for an accounting and for discovery. Trial by the court. Transferred from the April term, 1908, of the superior court by *Stone*, J. The bill alleges that the plaintiffs were the defendants' general agents for New Hampshire and Vermont from 1903 to 1907, and were to receive in payment for their services and disbursements a commission on gross receipts, one on excess pay-rolls so called, and one on the net profits of the business, known as contingent commissions, and that they cannot ascertain the amount due them without examining the defendants' books. The defendants admit that the plaintiffs were their general agents and that the agency contract provided for the payment of the above commissions; but they say that the plaintiffs failed to comply with provisions of the contract and for that reason are not entitled to the commissions.

The contract provided among other things (1) that either of the parties might terminate it by giving the other thirty days notice, (2) that in the event of the termination of the contract

commissions on excess pay-rolls ascertained thereafter should not be paid to the plaintiffs, (3) that on the fifth day of each calendar month the plaintiffs should remit to the defendants the amount shown to be due them according to the last preceding monthly statement, and (4) that if the contract was terminated, or if the plaintiffs failed to comply with its provisions in relation to remittances, they should forfeit their rights to contingent commissions.

In August, 1906, the defendants wrote the plaintiffs that they had decided to terminate the contract on September 25, and in the same letter suggested a plan by which the plaintiffs might continue to do business with them. Subsequently one of the defendants' special agents called on the plaintiffs, went over the matter with them, and left a draft of a new contract. October 9, 1906, he wrote the plaintiffs as follows: " I have advised President Stone of our interview on Friday last and of your agreeing to continue the agency in three counties, and I asked Mr. Stone to express himself as to the matters which you and I have had under discussion, and he writes me as follows: ' You can say to Mr. Perry, regarding contingent commissions, that we will give him the benefit of his writings under the old contract; as to commissions on excess pay-rolls, we will treat him, so far as we can, on the basis set forth in the printed form of contract. It may be, however, that the agents who will succeed him in the territory that has been detached will have to be used in securing the excess premiums in such a way as to entitle them to the commission. In that event, of course, we cannot allow Mr. Perry anything. He will have to leave these questions entirely to our sense of fairness, and we shall treat him as liberally as we can, with justice to the interests of the other parties involved.' I trust this covers the ground and will enable you to receive from the company fair treatment in regard to the matters of contingent commissions and excess pay-roll."

The plaintiffs took time to consider the matter, and after some further correspondence with the defendants wrote them on October 22, 1906, as follows: " Replying to your letter of the 20th as to the signed contract for the Maryland, covering territory suggested by Mr. Leavitt, would say that so far as we are concerned we care nothing for the contract. We look at it that it is simply a matter of good faith as between the company and the agent, and that the contract is nothing of advantage to us. If it is your practice and you insist upon the contract, we will sign and send it in ; at the same time we want the company to realize the fact that whenever it is necessary for us to place our business in other companies, we are at liberty to do so. Our standpoint is simply this: We have some business on our books which we can hold, and it would be much easier for us to continue to renew this in the

Maryland, than place it elsewhere. We have other business in view, which undoubtedly we shall secure, considerable of which has been solicited and worked for the Maryland. We would like to continue to send our business if we can be assured that we shall be properly treated. We don't like to work up business for you at our own expense and have it taken away, as was recently done, and be deprived of our commissions or our contingent commissions. We have given the company consistent and good service, and hope and expect the company will appreciate it, and, at the proper time, pay us the contingent commission that is due us. Mr. Levette assured me that this was the intention of Mr. Stone, and if so we would like to have his acknowledgment of same, and we would then readily sign the contract agreement and continue to send you such business as we can, and care for it in such a manner as we are capable to our joint interests."

To the foregoing letter the defendants made the following reply: " The only way in which you can be an agent of ours is to sign the contract which Mr. Levette left with you. If you decide to do that, please let me have it by return mail. In that event we will include, in making up your contingent commission account under it, the items to which you would have been entitled under your former contract, if the same had not been terminated. This, you will understand, is given you as a concession and not as a right, the old contract being entirely clear as to the termination of your interest in contingent commissions simultaneously with its termination." Upon receipt of this letter the plaintiffs signed the contract and returned it to the defendants, with the following reply: " Thanking you for your letter of October 25th, I have signed and am sending the contracts, as requested. This is done with the understanding that the contingent commission under the old contract is to be allowed in the same manner as though it had not terminated."

The contracts were precisely the same, except as to the territory included in the agency. The second one was signed October 27, but was dated September 25—the day the first one expired. The plaintiffs never complied with the provisions in respect to making remittances while either contract was in force, but the defendants paid them their contingent commissions for the years 1903, 1904, and 1905. After the defendants terminated the contract in the fall of 1906, they insisted that the plaintiffs were not entitled to contingent commissions for that year; but the reason given was not that the plaintiffs had failed to comply with the provision of the contract in respect to remittances, but that the defendants had terminated the contract as they had a legal right to do. The first suggestion that the plaintiffs had failed to comply with the pro-

vision as to remittances was in May or June, 1907, after they had written the defendants several letters in respect to a settlement of the contingent commission account for the previous year.

The defendants' motion that the bill be dismissed for want of proof was denied, and they excepted. They also excepted to the admission of certain evidence. The court found that the defendants had waived the conditions of the contract relating to commissions on excess pay-rolls and contingent commissions, and ordered them to make the discovery prayed for.

*John E. Allen*, for the plaintiffs.

*Milfred O. Garner* (of Massachusetts), for the defendants.

BINGHAM, J. At the hearing in the superior court, the plaintiffs' contention was that they were entitled to certain commissions, known as contingent commissions and commissions on excess pay-rolls, under contracts made with the defendants in 1903 and 1906 ; that although the 1903 contract was cancelled by the defendants in September, 1906, and the plaintiffs had not strictly complied with the conditions of the contracts upon which contingent commissions were to become payable, nevertheless they had substantially complied with them, and the defendants by agreement and by their conduct had waived any right they might otherwise have had to decline to pay the commissions. The defendants denied the waiver, and it was upon this question that the hearing was had.

In the disposal of the case it was proper to take up the question of waiver first; for if the defendants' right to insist upon the conditions in question had not been waived, then a finding to that effect would put an end to the case and obviate the necessity for discovery, while to have required the defendants to make discovery in the first instance, and before the question of waiver was determined, might have resulted in doing them an injury. Wig. Disc. 20–30. The hearing, however, resulted in a decree that the defendants had waived their right to insist upon the conditions, and that they should discover what, if anything, was due the defendants as commissions for the years 1906 and 1907.

The defendants have argued the case as if they had taken an exception to the decree. In this they are in error. No exception was taken to the decree. The only exceptions taken were to the admission of evidence and to the denial of the defendants' motion to dismiss the bill for want of proof. The latter exception is limited in its scope and does not present questions which might have been raised by an exception to the decree. Had such an exception

been taken, it would have been necessary to determine whether there was evidence to support the decree in its entirety ; but as the case stands, if there was any evidence from which a waiver could have been found under either contract, the motion to dismiss was properly denied.

A condition in the contract of 1903 provided that in the event of the termination of the contract by cancellation or otherwise, commissions on " excess premiums ascertained thereafter " and " contingent commissions " would not be paid to the plaintiffs. Upon the question of waiver of this condition, it appeared from correspondence between the parties and other evidence that after the contract of 1903 was cancelled, and as a consideration for entering into the contract of 1906, the defendants agreed that the plaintiffs should have their contingent commissions for the year 1906 that were earned under the contract of 1903, and should be treated by the defendants with reference to the commissions on excess pay-rolls, so far as they could be, on the basis set forth in the printed form of contract. This evidence was sufficient to establish a waiver of this condition.

The condition as to prompt remittance of premiums, upon which the payment of contingent commissions was also predicated, could have been found to have been waived from the evidence disclosing the course of dealing between the parties. It appeared that during the period of the first contract remittances had been delayed to some extent beyond the time agreed upon, and that the defendants had paid the contingent commissions each year down to 1906 without objection. This evidence was clearly admissible for the purpose of proving a waiver of the condition under the contract of 1903. And if the legal effect of the contract of September 25, 1906, read in the light of the surrounding circumstances, was to detach territory from the plaintiffs' agency and reinstate the contract of 1903, then the above evidence would be competent, not only to establish a waiver down to September 25, 1906, but from that time on through the year 1907 ; but as the latter question is not presented by the exceptions, it is not decided.

Upon the question whether Levette was acting as the agent of the defendants in bringing about the contract of 1906 and adjusting the differences between the parties as to commissions under the contract of 1903, it was competent for the plaintiffs to show that after undertaking to do these things he procured the contract of 1906 from the defendants and presented it to the plaintiffs for their signatures, that the president of the company acknowledged that Levette was their agent, and later wrote the plaintiffs that the contract left by him with them was the company's contract.

The exception taken to the testimony given by one of the plain-

tiffs, to the effect that he had information leading him to believe that there were commissions due them on excess pay-rolls arising out of business done by them for the defendants under the contract of 1903, was waived; for after the exception was taken it was expressly agreed that the memorandum made by the witness, showing what his information was, the sources from which he obtained it, and all the correspondence in relation to it, should be put in evidence. Moreover, this evidence was entirely immaterial. It related to a question concerning which the plaintiffs had requested that the defendants be required to make discovery and had no bearing upon any issue then being heard before the court. It had nothing to do with the question of waiver and was in no sense prejudicial.

No exception was taken to the admission of the letter from Levette to the plaintiffs.

*Exceptions overruled.*

All concurred.